United States District Court
Southern District of Texas
**ENTERED**
February 22, 2021
Nathan Ochsner, Clerk

# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# GALVESTON DIVISION

No. 3:19-cv-00244

CURTIS LALLA, *PLAINTIFF*,

v.

G & H TOWING COMPANY, *DEFENDANT*.

## MEMORANDUM OPINION AND ORDER

JEFFREY VINCENT BROWN, UNITED STATES DISTRICT JUDGE.

Before the court is the defendant's motion for summary judgment.[1] Having considered the parties' arguments, the evidence, and the applicable law, and for the reasons discussed below, the court grants the motion.

## I.    FACTUAL BACKGROUND

G&H Towing employed Curtis Lalla for over 15 years. During that time, he belonged to the Seafarers Union of North America.[2] The union had entered into a collective bargaining agreement ("the CBA") with G&H which governed leave of absences.[3] On March 27, 2017, Mr. Lalla requested a leave

---

[1] Dkt. 31.
[2] *Id.* at 1.
[3] *Id.* at 2.

of absence, which was approved for one month, pursuant to the terms of the

CBA.[4] The relevant section provides:

> By written agreement between the Company and the Union,
> leaves of absence may be granted to employees. Such leaves of
> absence shall be for the period of not in excess of two (2) months,
> subject to renewal or extension for like periods of time by written
> agreement between the Company and the Union. Such leaves of
> absence may not be taken to seek or enjoy other employment and
> shall not be abused for the purposes of evading a scheduled trip.

On April 26, Mr. Lalla requested an extension of his leave until May 27, which

G&H approved.[5]

During the first month (and beginning on the first day) of Mr. Lalla's

leave, he earned the 180 course hours required to obtain his Texas real-estate

license.[6] By May 4, four days into his requested 30-day leave extension, Mr.

Lalla was a licensed sales agent.[7] On May 9, he entered into an independent-

contractor agreement as a sales associate with Century 21/The Hills Realty

in Kerrville ("Century 21") and ordered business cards.[8] Mr. Lalla's name and

photo were then posted on the Century 21 website as a sales agent.[9] On May

25, Mr. Lalla sent an email to Century 21's owner describing in detail the time

---

[4] Dkt. 4, Ex. B.
[5] *Id.*
[6] Dkt. 31 at 3.
[7] *Id.*
[8] *Id.*
[9] *Id.*

2

and effort he had put into his "new career" as a real-estate agent for the last "couple weeks," all during his approved leave from G&H.[10]

During the second month of Mr. Lalla's leave, Elaine Lauzon, G&H's director of personnel, was informed that Mr. Lalla was working as a teacher.[11] Ms. Lauzon contacted Mr. Lalla and told him he was fired because he was working while on leave in violation of the CBA.[12] When Mr. Lalla told Ms. Lauzon he was not working as a teacher, she rescinded her decision to fire him.[13]

On May 19, Mr. Lalla informed Ms. Lauzon that he could not return to work as scheduled on May 27, and requested another extension of his leave of absence.[14] As the CBA does not allow for leave to exceed two months, Ms. Lauzon denied the extension. But soon thereafter, either Mr. Lalla or Ms. Lauzon (they disagree as to who) brought up the option of his invoking the Family Medical Leave Act ("FMLA").[15] This was the first time Mr. Lalla alleged that he was helping his mother care for his step-father, who—according to Mr. Lalla—suffers from alcoholism.[16]

---

[10] *Id.*
[11] Dkt. 31 at 3.
[12] Dkt. 31, Ex. 1.
[13] Dkt. 31, Exs. 1–2.
[14] Dkt. 31, Ex. 2.
[15] Dkt. 31 at 4.
[16] Dkt. 31, Ex. 6.

Regarding the FMLA, Ms. Lauzon sent Mr. Lalla an email:

> I am sorry for your troubles and did not copy Janelle Shaw on this, but she will be the one setting up your FMLA. What you choose to share with her other than what is required for FMLA is completely up to you. There are some other forms that you will need to complete as will the doctor caring for your father. Janell is very good and has handled this before.[17]

Ms. Lauzon then emailed Janelle Shaw, G&H's benefits coordinator, copying Mr. Lalla, to request that he be sent the FMLA paperwork, which was then provided to him on May 21.[18] Mr. Lalla did not return the request for FMLA leave or the required physician-certification form before his firing on May 25.[19]

After Mr. Lalla received the FMLA paperwork, and while he was still on his leave of absence, Ms. Lauzon was told that he was working as a real-estate agent.[20] She then confirmed that he was in fact listed as a sales agent on Century 21's website.[21] Based on this information, Ms. Lauzon believed that Mr. Lalla was in violation of the CBA's mandate not to "seek or enjoy other employment" while on leave.[22] She informed G&H's management of her intent to fire Mr. Lalla and called him to discuss his violation of the

---

[17] *Id.*
[18] *Id.*
[19] Dkt. 4, Ex. B.
[20] Dkt. 31, Ex. 2.
[21] *Id.*
[22] *Id.*

CBA.[23] Mr. Lalla did not deny his relationship with Century 21; instead, he claimed he had not violated the CBA because he was an independent contractor rather than an employee of Century 21, and that what he had done was not "work."[24] Ms. Lauzon was not persuaded and fired Mr. Lalla, pursuant to the CBA, effective May 25.[25] She promptly provided Mr. Lalla with a letter explaining the reason for his termination, copying the union.[26]

## II.   LEGAL STANDARD

Summary judgment is proper when "there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law."[27] The court must view the evidence in the light most favorable to the nonmovant.[28] Initially, the movant bears the burden of presenting the basis for the motion and the elements of the causes of action upon which the nonmovant will be unable to establish a genuine dispute of material fact.[29] The burden then shifts to the nonmovant to come forward with specific facts showing there is a genuine dispute for trial.[30] "A dispute about a material fact

---

[23] *Id.*, Ex. 2.

[24] *Id.*

[25] *Id.*

[26] *Id.*; *Id.*, Ex. 9.

[27] Fed. R. Civ. P. 56(a).

[28] *Coleman v. Hous. Indep. Sch. Dist.*, 113 F.3d 528, 533 (5th Cir. 1997).

[29] *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

[30] *See* Fed. R. Civ. P. 56(c); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986).

is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."[31]

## III.   ANALYSIS

The FMLA entitles employees to take reasonable leave for medical reasons.[32] Two types of claims arise under the FMLA: (1) "interference" or "(a)(1)" claims in which the employee alleges that an employer denied or interfered with his substantive rights under the FMLA, and (2) "retaliation" or "(a)(2)" claims in which the employee alleges that the employer discriminated against him for exercising his FMLA rights.[33] Mr. Lalla alleges both types.

### A.    Interference Claim

An employer is prohibited from interfering with, restraining, or denying an employee's exercise, or attempted exercise, of any right contained in the FMLA.[34] To establish a *prima facie* case of interference, Mr. Lalla must show:

> (1) he was an eligible employee; (2) his employer was subject to FMLA requirements; (3) he was entitled to leave; (4) he gave proper notice of his intention to take FMLA leave; and (5) his

---

[31] *Bodenheimer v. PPG Indus., Inc.*, 5 F.3d 955, 956 (5th Cir. 1993) (citation omitted).

[32] 29 U.S.C. § 2601(b)(2).

[33] 29 U.S.C. § 2615(a)(1)-(2).

[34] 29 U.S.C. § 2615(a)(1).

employer denied him the benefits to which he was entitled under the FMLA.[35]

Mr. Lalla's interference claim is pretty weak. As G&H points out, he has failed to proffer evidence that he was an eligible employee, was entitled to FMLA leave, or was denied benefits to which he was entitled.[36] Indeed, Mr. Lalla's summary-judgment response amounts to an abandonment of his interference claim. That leaves retaliation as his only recourse.

## B.    Retaliation Claim

The Fifth Circuit applies the familiar *McDonnell-Douglas* burden-shifting framework to FMLA retaliation claims.[37] Under this framework, the employee must first establish a *prima facie* case of retaliation.[38] If the he makes a *prima facie* case, the burden shifts to the employer to "articulate a legitimate, nondiscriminatory or nonretaliatory reason" for its action.[39] If it does so, the burden swings back to the employee to show the employer's stated reason was a mere pretext.[40]

---

[35] *Caldwell v. KHOU–TV*, 850 F.3d 237, 245 (5th Cir. 2017).

[36] Dkt. 31 at 18.

[37] *Richardson v. Monitronics Int'l, Inc.,* 434 F.3d 327, 332 (5th Cir. 2005) (citing *McDonnell-Douglas Corp. v. Green*, 411 U.S. 792 (1973)); *Powers v. Woodlands Religious Cmty., Inc.,* F. App'x 300, 302 (5th Cir. 2009); *Hunt v. Rapides Healthcare Sys., LLC*, 277 F.3d 757, 768 (5th Cir. 2001).

[38] *Hunt*, 277 F.3d at 768.

[39] *Id.*

[40] *Id.*; *Auguster v. Vermillion Parish Sch. Bd.*, 249 F.3d 400, 403 (5th Cir. 2001).

7

G&H argues it fired Mr. Lalla for a legitimate non-retaliatory reason—his violation of the CBA's leave-of-absence provision—regardless of his FMLA request.[41]  Mr. Lalla asserts that retaliatory animus motivated G&H's actions because he requested FMLA leave shortly before his termination. The Fifth Circuit mandates a two-fold approach to addressing such claims.[42] First, a court should look for direct evidence of retaliation; if it finds none, it should then apply the *McDonnell–Douglas* burden-shifting framework.[43]

## 1.    There is No Direct Evidence of Retaliation

To "constitute direct evidence [of retaliation] at this stage of the analysis," the evidence "must be such that, if believed, would prove the existence of a fact . . . without any inferences or presumptions."[44] Here, there is no such direct evidence of retaliation. Mr. Lalla neither contends that anyone told him he was being fired for requesting FMLA leave, nor is there any other direct evidence in the record.

## 2.    *McDonnell-Douglas* Analysis

As Mr. Lalla has presented no direct evidence of retaliation, the *McDonnell-Douglas* burden-shifting analysis applies. First, Mr. Lalla must

---

[41] Dkt. 31 at 10.

[42] *Ray v. United Parcel Serv.*, 587 Fed.Appx. 182, 187 (5th Cir.2014).

[43] *Id.* (citing *Richardson v. Monitronics, Int'l, Inc.,* 434 F.3d 327, 332 (5th Cir.2005).

[44] *Bodenheimer v. PPG Indus., Inc.*, 5 F.3d 955, 958 (5th Cir.1993).

make a *prima facie* showing of FMLA retaliation.[45] Second, if he satisfies the first requirement, G&H "must articulate a legitimate, non-discriminatory reason for the adverse employment action."[46] Third, if G&H makes a sufficient showing, Mr. Lalla "must offer sufficient evidence to create a genuine issue of fact" that G&H's proffered reason is merely a pretext for retaliation or, "although true, is but one of the reasons for its conduct, another of which was discrimination."[47] Finally, if Mr. Lalla satisfies the third-step, G&H may prevail only by proving it would have taken the adverse employment action regardless of the discriminatory motivation; this showing "is effectively that of proving an affirmative defense."[48]

As the court assumes *arguendo* that *McDonnell-Douglas*'s first two steps are satisfied, its decision turns on the pretext inquiry: can Mr. Lalla offer "sufficient evidence to create a genuine issue of fact" that G&H's claimed reason for firing him was merely pretextual?[49]

A plaintiff "may show pretext either through evidence of disparate treatment or by showing that defendant's proffered explanation is false or

---

[45] *Richardson*, 434 F.3d at 333.

[46] *Id.*

[47] *Id.*

[48] *Id.*

[49] *Id.*

unworthy of credence."[50] Mr. Lalla provides the following to support his belief that his request for FMLA leave motivated G&H to fire him:

(i)      other employees (specifically pilot deputies) were permitted to work while taking leave;

(ii)     before he made his FMLA request, Ms. Lauzon attempted to terminate Mr. Lalla pursuant to the CBA for working as a teacher while on leave;

(iii)    his work as a real-estate agent did not violate the CBA;

(iv)    before he made his FMLA request, Ms. Lauzon called Mr. Lalla on one occasion to ask when he would return from leave; and

(v)     Mr. Lalla was fired before he was given an opportunity to complete his FMLA paperwork.[51]

None of these allegations amount to a genuine issue of material fact. First, it is well-settled that to succeed under a theory of disparate treatment, Mr. Lalla would have to prove that his circumstances were "nearly identical" to the circumstances of the disparately treated employees.[52] But pilot deputies are not governed by the same CBA as Mr. Lalla—he is a master, not a pilot deputy.[53] In addition, Mr. Lalla has testified that he was unaware of anyone who was treated more favorably than him with respect to leaves of absence.[54]

---

[50] *Caldwell v. KHOU-TV*, 850 F.3d 237, 242 (5th Cir. 2017).
[51] Dkt. 31 at 12.
[52] *See Berquist v. Wash. Mut. Bank,* 500 F.3d 344, 353 (5th Cir. 2007).
[53] *Id.*
[54] Dkt. 31, Ex. 1 at 96.

Second, Mr. Lalla argues that Ms. Lauzon's previous attempt to fire him, when she thought he was teaching during his leave, somehow provides proof of pretext. To the contrary, however, this earlier incident shows that Ms. Lauzon was consistently applying the CBA. Well before Mr. Lalla ever inquired about FMLA leave, Ms. Lauzon and G&H already suspected that he was working while on leave—and they were prepared to fire him for it. This not only fails to show pretext, it supports the idea that G&H would have fired Mr. Lalla regardless of any FMLA request.

Third, Mr. Lalla contends he was not violating the CBA by working as a real-estate agent. But to establish that the proffered nondiscriminatory reason is mere pretext, Mr. Lalla must show that G&H's explanation for firing him is false or "unworthy of credence."[55] His subjective belief that he was not violating the CBA will not preclude summary judgment.[56] Indeed, what Ms. Lauzon and G&H believed matters more than what Mr. Lalla believed.[57] The summary-judgment evidence shows that Ms. Lauzon believed

---

[55] *Reeves*, 530 U.S. at 147.

[56] *See Lawrence v. Univ. of Tex. Med. Branch*, 163 F.3d 309, 313 (5th Cir. 1999) ("[A] subjective belief of discrimination, however genuine, [may not] be the basis of judicial relief." (quoting *Elliott v. Group Med. & Surgical Serv.*, 714 F.2d 556, 567 (5th Cir.1983)); *see also Price v. Marathon Cheese Corp.,* 119 F.3d 330, 337 (5th Cir. 1997).

[57] *Devoss v. Sw. Airlines Co.*, 903 F.3d 487, 492 (5th Cir. 2018); *see Waggoner v. City of Garland*, 987 F.2d 1160, 1165–66 (5th Cir. 1993) (holding in discrimination cases that "the inquiry is limited to whether the employer

"in good faith" that Mr. Lalla was violating the CBA and that her decision to fire him "was based on that belief."[58] Mr. Lalla has conceded that both G&H generally and Ms. Lauzon specifically honestly believed that he was working for Century 21 in breach of the CBA.[59] And that honest belief shows that the termination was not pretextual.[60]

Fourth, the temporal proximity between Mr. Lalla's termination and his request for FMLA leave will not, by itself, save him from summary judgment. "[T]iming alone is not enough to support retaliation when evidence shows that the employer's actions were justified. An anti-discrimination or retaliation statute does not exempt an employee from violations of company work rules or job requirements."[61]

Mr. Lalla's fifth argument, that G&H terminating him before he could complete his FMLA paperwork proves pretext, fails for the same reason as his fourth—timing alone will not do the trick.

---

believed the allegation in good faith and whether the decision to discharge the employee was based on that belief").

[58] *Id.*

[59] Dkt 31., Ex. 1, 80: 12-14 ("Q: Did the company believe that you were in breach of the CBA, in your estimation? A: Yes."); *Id.* at 81:1 ("[Ms. Lauzon] believed I was working for Century 21, yes.").

[60] *See Mayberry v. Vought Aircraft Co.*, 55 F. 3d 1086, 1089, 1093 (5th Cir. 1995) (affirming summary judgment when employer suspended employee upon its "honest belief" he had violated company policy).

[61] *Woodson v. Scott & White Mem'l Hosp.*, 255 F. App'x 17, 20 (5th Cir. 2007).

In sum, even assuming that Mr. Lalla could make a *prima facie* showing of retaliation, he has still failed to raise a fact issue on whether G&H's reason for firing him was pretextual.

\* \* \*

For the reasons above, the court grants G&H's motion for summary judgment and dismisses Mr. Lalla's claims with prejudice.

Signed on Galveston Island on this the 22nd day of February, 2021.

JEFFREY VINCENT BROWN
UNITED STATES DISTRICT JUDGE